IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ELENORA FAYE SCOTT, ) | Case No. 13-40447-13-abf |
| ) | |
| Debtor. ) | |

ORDER DENYING THE SADER LAW FIRM'S MOTION
REQUESTING ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE CLAIM AND SUSTAINING DEBTOR'S
OBJECTION TO CLAIM NUMBER 2-1 OF THE SADER LAW FIRM

The Sader Law Firm (SLF) requests the allowance and payment of an administrative claim for fees which Debtor Elenora Faye Scott incurred in connection with SLF's representation of her in a previous Chapter 13 case. For the reasons announced at the hearing held on May 14, 2013, as supplemented by those that follow, SLF's Motion Requesting Allowance and Payment of Administrative Claim is DENIED, and the Debtor's Objection to SLF's claim is SUSTAINED, with such claim being allowed as a general unsecured claim.

On July 8, 2008, SLF filed a Chapter 13 bankruptcy case on behalf of the Debtor in this Court.[1] While serving as Debtor's counsel for three and a half years in that case, SLF filed schedules, attended hearings, resolved two Motions for Relief from Stay, worked on as many as eight Motions to Dismiss filed by the Trustee, filed as many as six Motions to Suspend Plan Payments, and amended the

---

[1] Case Number 08-42730.

Plan six times, all in an attempt to allow the Debtor to keep her home while she was experiencing periods of unemployment or otherwise having difficulty making plan payments. The case was ultimately dismissed on February 6, 2012 on the Trustee's Motion to Dismiss for default in plan payments. As counsel for the Debtor, SLF accrued attorney's fees of $9,551.32, of which $2,544.44 was paid in the case, leaving an unpaid balance of $7,006.88 when the case was closed. No one disputes that those fees were reasonable for the services provided by SLF.

After that case was dismissed, the Debtor again faced foreclosure on her home. She contacted SLF to inquire about re-filing, and counsel offered to do so if she paid $1,500 of the fees owed from the first case. If she agreed to pay that amount, SLF agreed to waive the remainder of its claim against her. The Debtor chose instead to retain new counsel, who filed the instant Chapter 13 case on the eve of foreclosure, February 13, 2013, which was just over a year after the first case was dismissed.

SLF filed a Proof of Claim in this case in the amount of $7,006.88 and filed it as a priority unsecured claim. It also filed a Motion Requesting Allowance and Payment of Administrative Claim. The Debtor objected to the Claim and responded to the Motion, asserting that the Claim should be allowed as a general unsecured claim. The Debtor's proposed plan in this case provides for a zero percent payout to general unsecured claims.

2

SLF points to §503(b)(1)(A) of the Bankruptcy Code in support of its argument that it is entitled to an administrative expense claim. That section provides for an administrative expense for "the actual, necessary costs and expenses of preserving the estate."[2] If allowed as an administrative claim under that section, the Claim would be given priority under § 507(a)(2),[3] and would be required to be paid in full through the Plan pursuant to § 1322(a)(2).[4] In contrast, if SLF's Claim is not allowed as a priority claim, SLF will receive nothing on it under the zero-percent Plan.

Attorneys' fees can qualify as administrative expense claims under § 503(b)(1)(A) *if* they are incurred to preserve the estate. SLF asserts that § 503(b)(1)(A) contains no requirement that an attorney's work preserving the estate must be in regard to the case existing at the time the claim is asserted. SLF points out that, as demonstrated by the Schedules A and B in both cases, the estate in this case is virtually identical to the estate it worked so diligently to preserve in the prior case. SLF also asserts it is appropriate to grant it an administrative claim since the current case is basically a continuance of the first case.

---

[2] 11 U.S.C. § 503(b)(1)(A).

[3] Section 507(a)(2) gives second priority to "administrative expenses allowed under section 503(b) of this title."

[4] Section 1322(a)(2) provides that the plan "shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim."

The Debtor disagrees. While she does not oppose the amount of the claim and concedes it should be allowed as a general unsecured claim, she asserts that the language of § 503(b)(1)(A) simply does not allow its allowance as a priority administrative expense claim.

The Debtor is correct. As stated, § 503(b)(1)(A) allows for the actual and necessary costs and expenses of preserving *the estate*. A bankruptcy estate is not created until the bankruptcy case is filed.[5] In contrast to a single case converted from one chapter to another – where the estate continues[6] and the Bankruptcy Code expressly preserves administrative claim status for pre-conversion administrative claims[7] – nothing in the Bankruptcy Code allows for the bridging of the estate from a prior case to a subsequent case, even when the two estates are nearly identical. Nor does the Bankruptcy Code expressly preserve the administrative priority of

---

[5] 11 U.S.C. § 541(a) ("The commencement of a case under section 301, 302, or 303 of this title creates an estate."); *see also In re Larsen*, 59 F.3d 783 (8th Cir. 1995) (holding in a Chapter 7 case that an estate was not created until the Chapter 7 petition was filed).

[6] *See, e.g.,* 11 U.S.C. § 348(f)(1) ("[W]hen a case under chapter 13 of this title is converted to a case under another chapter under this title . . . property of the estate in the converted case shall consist of property of the estate, as of the date of the filing of the petition, that remains in possession of or is under the control of the debtor on the date of conversion.").

[7] *See, e.g.,* 11 U.S.C. § 348(d) ("A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, *other than a claim specified in section 503(b) of this title*, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.") (emphasis added).

4

claims in a prior case when a second case is filed.[8] Congress gave administrative priority to certain other prepetition claims,[9] but did not do so for claims such as SLF's here.  Although *In re Larsen* did not involve successive Chapter 13 cases, as is the situation here, the Eighth Circuit's analysis and holding there – that administrative claims from a prior case do not retain priority status in any subsequent case – applies equally here. In sum, § 503(b)(1)(A) simply cannot be read to include attorneys' fees incurred in prior cases.

Both parties assert policy grounds in support of their relative positions.  SLF unquestionably represented the Debtor zealously throughout her first case, and did so with the understanding its fees would be paid as a priority claim in that case. SLF asserts that not allowing administrative expense priority for such fees in this situation chills debtors' attorneys' ambition to vigorously perform legal services on behalf of their Chapter 13 clients.  In other words, Chapter 13 debtors' attorneys who do not believe they have a reasonable chance of getting paid if the case is

---

[8] *Accord In re Larsen*, 59 F.3d at 787 ("When a single bankruptcy case is converted from a reorganization proceeding to a Chapter 7 liquidation, there is good reason to assume that all administrative expenses allowed under § 330 are entitled to at least some priority for benefitting the ultimate estate. That assumption is far less appropriate when dealing with administrative expense claims carried over to a second, distinct bankruptcy case."); *In re Jartran, Inc.*, 886 F.2d 859, 870 (7th Cir. 1989) (holding that, to receive an administrative claim in a second Chapter 11 case, the claimant "must demonstrate its claims relative to [the second case]; and administrative priority in [the first Chapter 11 case] does not translate to an administrative priority in [the second case].").

[9] *See, e.g.,* 11 U.S.C. § 503(b)(9) (allowing as an administrative expense "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business . . .").

dismissed may not be as motivated to zealously represent their clients throughout a Chapter 13 case, particularly a troubled one like this one was. And, as SLF points out, were it not for the services provided by SLF in the previous case, there would likely be no estate left to preserve in this one. Of course, debtors' counsel are obligated to zealously represent their clients in every case they take, as SLF did in its representation of the Debtor in her prior case. In any event, that policy argument cannot trump the language of the statute.

On the other hand, the Debtor points out that many Chapter 13 bankruptcy cases are dismissed prior to completion for a multitude of reasons not involving bad faith. Routinely allowing debtors' attorneys administrative claims for work done in prior cases would prevent many of those debtors from receiving needed relief in a new case. Although the 2005 amendments to the Bankruptcy Code curtailed somewhat the ability of debtors to file successive cases, the Bankruptcy Code does still permit it, and does not provide that fees in a prior case are to be given administrative priority.

As I mentioned at the hearing, if there had been any evidence that the Debtor dismissed the prior case and filed the new one in bad faith, then SLF may have had a basis to object to confirmation of the Plan[10] or seek dismissal.[11] However, the

---

[10] 11 U.S.C. § 1325(a)(3) (the court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law").

6

Debtor's case first case was dismissed after trying for three and a half years to make it work only because she was unable to secure consistent employment and make her plan payments. She waited a full year after dismissal to file her second case, which was done for the purpose of saving her home. She appears to now have steady employment. In addition, the Debtor inquired of SLF to represent her in the new case, and only sought new counsel because she was unable to pay the fee requested by SLF prior to the scheduled foreclosure. Although SLF asserts it is unjust for its fees not to be paid, it has not asserted that this case was filed in bad faith.

In sum, the Bankruptcy Code simply does not contain a provision allowing administrative priority for fees incurred in a prior case and SLF's request for administrative priority must be denied.

ACCORDINGLY, the Sader Law Firm's Motion Requesting Allowance and Payment of Administrative Claim is DENIED, and the Debtor's Objection to Claim Number 2-1 filed by the Sader Law Firm is SUSTAINED, with such claim being allowed as a general unsecured claim in the amount of $7,006.88. There being no just reason for delay, this Order shall be final for purposes of appeal.[12]

---

[11] Section 1307(c) permits a court to convert or dismiss a Chapter 13 case for cause, which includes filing a bankruptcy petition in bad faith, including unfairly manipulating the Bankruptcy Code through multiple filings. *See also In re Molitor*, 76 F.3d 218, 220 (8th Cir. 1996); *Handeen v. LeMaire*, 898 F.2d 1346 (8th Cir. 1990).

[12] Fed. R. Civ. P. 54(b), made applicable here by Fed. R. Bankr. P. 7054.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 5/16/13